# In the United States Court of Federal Claims

No. 21-1148C
(Filed:  August 19, 2021)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| DEREK N. JARVIS, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |

Pro Se Claim; Reparations Claim Founded
on Native American Heritage, Enslaved
Ancestors, and Systemic Racism; RCFC
12(b)(1)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Derek N. Jarvis, Silver Spring, MD, pro se.

Borislav Kushnir, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

Plaintiff Derek N. Jarvis is proceeding pro se in this matter.  In his complaint he requests forty million dollars in damages related to the treatment of indigenous Americans who were enslaved and whose descendants continue to suffer from systemic racism.  Mr. Jarvis also applies to proceed in forma pauperis.  Defendant moves, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss Mr. Jarvis's complaint for lack of subject matter jurisdiction.  For the reasons set forth below, the court grants Mr. Jarvis's application to proceed in forma pauperis and also grants defendant's motion to dismiss.

## I.  BACKGROUND

Mr. Jarvis is a frequent litigant in federal courts.[1]  See, e.g., Jarvis v. U.S. Dep't of Hous. & Urb. Dev., 310 F. Supp. 3d 79, 83 (D.D.C.) (granting defendant's summary judgment motion

---

[1]  The court derives much of this background information from the complaint, but also relies on public records such as federal court decisions.  See, e.g., Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985) (stating that when "deciding . . . a Rule 12(b)(1) motion, the court can consider, as it did in this case, evidentiary matters outside the pleadings"); Floyd v. United States, 125 Fed. Cl. 183, 190 n.3 (2016) (noting that Federal Rule of Evidence 201 permits the court to take judicial notice of matters of public record).  The court makes no findings of fact in this opinion.

in a Freedom of Information Act ("FOIA") action), aff'd, No. 18-5127, 2018 WL 5115539 (D.C. Cir. Oct. 12, 2018); Jarvis v. City of Alexandria, No. 17-CV-378, 2017 WL 2692682, at *2 (E.D. Va. June 22, 2017) (entering an antifiling injunction because Mr. Jarvis had "a history of vexatious litigation, having now filed over twenty-five meritless lawsuits in Maryland, Pennsylvania, and Virginia"), aff'd sub nom. Jarvis v. City of Alexandria Mayor's Off., 699 F. App'x 186 (4th Cir. 2017) (mem.); Jarvis v. FedEx Off. & Print Servs., Inc., No. 08-1694, 2011 WL 826796, at *10 (D. Md. Mar. 7, 2011) (granting defendant's motion for summary judgment on a civil rights claim), aff'd, 442 F. App'x 71 (4th Cir. 2011).  In this court, Mr. Jarvis has filed four prior suits, three of which were FOIA suits dismissed for lack of jurisdiction, see Jarvis v. United States, No. 17-829C, slip op. at 2 (Fed. Cl. July 6, 2017); Jarvis v. United States, No. 17-828C, 2017 WL 2735597, at *1 (Fed. Cl. June 26, 2017); Jarvis v. United States, No. 17-763C, slip op. at 2 (Fed. Cl. June 22, 2017), and a fourth, also dismissed for lack of jurisdiction, which alleged that he had been denied access to impartial justice by the United States District Court for the District of Maryland, Jarvis v. United States, No. 17-762C, 2017 WL 4674048, at *1 (Fed. Cl. Oct. 18, 2017), aff'd, 718 F. App'x 984 (Fed. Cir. 2018) (mem.).

In the complaint now before the court, Mr. Jarvis's allegations of fact largely concern the historic treatment of Native Americans, slaves, and their descendants, as well as the "Black-White wealth gap." Compl. 23.  Mr. Jarvis alleges that he is a "direct descendant of the Cherokee Freedmen," id. at 1, that he is of Cherokee, Powhatan, and Iroquois ancestry, and that he is "100% Native American" and "NOT AFRICAN," id. at 4.  As a result of historical forces and the effects of racism, Mr. Jarvis asserts that he is destitute.

Mr. Jarvis's complaint references numerous sources of law that are examined in more detail below.  To cite just a few examples of the law upon which he relies, Mr. Jarvis refers to the constitutional guarantees of due process and equal protection, as well as civil rights statutes. He also alleges that he has been slandered and that his birthright of land, labor, and wealth has been "converted" by the United States. Id. at 19.  Perhaps the most accurate characterization of his claim is that he seeks reparations for acts against "so called (Black) Americans" by the United States (or the original thirteen colonies). Id. at 8.

Defendant filed a motion to dismiss for lack of subject matter jurisdiction, to which Mr. Jarvis responded.  In his response, Mr. Jarvis raises two new legal bases for jurisdiction for his suit that are addressed below.  Defendant then filed its reply.  The court deems oral argument unnecessary; thus, defendant's motion is ripe for adjudication.

## II.  STANDARDS OF REVIEW

### A.  Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord

Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from his burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

### B.  Motion to Dismiss Under RCFC 12(b)(1)

Whether the court has subject matter jurisdiction to decide the merits of a case is a threshold matter.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94 (1998). "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  When considering whether to dismiss a complaint for lack of jurisdiction pursuant to RCFC 12(b)(1), the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1).  However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976).  Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

To determine whether it has jurisdiction, the court discerns the true nature of the claims in the complaint and is not constrained by the plaintiff's characterization of those claims.  Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994).  If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

### III.  DISCUSSION

The court discerns in the complaint a number of legal grounds for Mr. Jarvis's claims. Although the true nature of his claims is a request for reparations based on historic events and systemic racism, the court first addresses the jurisdictional limits that bar the other possible

claims discernable in the complaint.[2]  The court then turns to a new jurisdictional allegation set forth in Mr. Jarvis's response brief.  Finally, the court considers whether it has jurisdiction over reparations claims such as the one asserted here by Mr. Jarvis.

### A.  Claims Against Nongovernmental Entities

As an initial matter, the court observes that Mr. Jarvis names multiple defendants in his complaint:  the United States, "United States Corporations," and "Universities."  Compl. 1.  However, it is well settled that the United States is the only proper defendant in the Court of Federal Claims.  See 28 U.S.C. § 1491(a)(1) (providing that the Court of Federal Claims has jurisdiction over claims against the United States); RCFC 10(a) (requiring that the United States be designated as the defendant in the Court of Federal Claims); Nat'l City Bank of Evansville v. United States, 163 F. Supp. 846, 852 (Ct. Cl. 1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained." (footnotes omitted)); Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual.").  Indeed, the jurisdiction of the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, . . . and if the relief sought is against others than the United States, the suit as to them must be ignored as beyond the jurisdiction of the court."  Sherwood, 312 U.S. at 588.  Accordingly, Mr. Jarvis's claims against all parties except the United States must be dismissed for lack of jurisdiction.

### B.  Civil Rights Claim

Turning to Mr. Jarvis's claims against the United States, he first appears to assert a civil rights claim founded on the institution of slavery, his Native American ancestry, and discriminatory treatment related to the perception that he is an African-American.  He references the Civil Rights Act of 1964 and various civil rights statutes such as 42 U.S.C. §§ 1982, 1983, 1985, and 1986.  It is well established, however, that racial discrimination claims, and other civil

---

[2]  Although Mr. Jarvis discusses his qualifications for membership in the Cherokee Nation, and specifically references a ruling by Judge Thomas F. Hogan that the descendants of the Cherokee Freedmen are entitled to tribal membership, see Cherokee Nation v. Nash, 267 F. Supp. 3d 86, 139-40 (D.D.C. 2017), there is no allegation in the complaint that Mr. Jarvis has applied for tribal membership.  Nor does Mr. Jarvis include in the complaint a request that this court grant him membership in the Cherokee Nation.  To the extent that such a request could be implied in the complaint, this court has no jurisdiction to provide equitable relief of this sort. See, e.g., Hunter v. United States, No. 09-355C, 2009 WL 4857378, at *1 (Fed. Cl. Dec. 8, 2009) (stating that this court lacks jurisdiction to provide equitable relief so that a plaintiff may gain admission into a tribe).  Further, even if Mr. Jarvis wishes to assert a claim against the Cherokee Nation, such a claim cannot be brought in this court.  See Sherwood, 312 U.S. at 588 ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court.").

rights claims, are not within the jurisdiction of this court.  E.g., <u>Daniels v. United States</u>, 59 Fed. Cl. 506, 507 (2004).  Any civil rights claim that might be discerned in the complaint must be dismissed for lack of subject matter jurisdiction.

## C.  Equal Protection and Due Process Claims

Mr. Jarvis also alludes to his rights to equal protection and due process under the law when describing the injuries he has suffered.  However, these constitutional guarantees are not money-mandating sources of law for Tucker Act purposes.  <u>See, e.g.</u>, <u>Mullenberg v. United States</u>, 857 F.2d 770, 773 (Fed. Cir. 1988) ("As to [the plaintiff's] claim for damages for alleged violation of the due process and equal protection clauses of the Constitution, it is firmly settled that these clauses do not obligate the United States to pay money damages.").  Therefore, any due process or equal protection claim in the complaint must be dismissed for lack of subject matter jurisdiction.

## D.  Tort Claims

Mr. Jarvis next alleges that he is the victim of slander, because his Native American heritage has been mischaracterized as African heritage, and conversion, because the resources of his enslaved ancestors were appropriated.  Claims of slander and conversion sound in tort.  <u>See Wall v. United States</u>, 141 Fed. Cl. 585, 597-98 (2019) (noting that slander is a tort); <u>Block v. United States</u>, 66 Fed. Cl. 68, 72 (2005) (noting that conversion is a tort).  The Tucker Act specifically excludes tort claims from this court's jurisdiction, 28 U.S.C. § 1491(a)(1), so to the extent that Mr. Jarvis asserts these allegations as discrete claims, they must be dismissed.[3]

## E.  Unjust Enrichment Claim

Mr. Jarvis further alleges that the United States has been unjustly enriched by the unfair treatment of his ancestors.  Claims founded on unjust enrichment theories rely on the equitable principle of contracts implied in law.  <u>Jarurn Invs., LLC v. United States</u>, 144 Fed. Cl. 255, 262-63 (2019).  This court's Tucker Act jurisdiction does not encompass claims founded on contracts implied in law.  <u>Id.</u>; <u>see also United States v. Tohono O'Odham Nation</u>, 563 U.S. 307, 313 (2011) (stating that the Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers"); <u>Hercules, Inc. v. United States</u>, 516 U.S. 417, 423 (1996) (holding that Tucker Act jurisdiction excludes claims founded on contracts implied in law).  Mr. Jarvis's unjust enrichment claim is thus beyond this court's jurisdiction and must be

---

[3]  In his response brief, Mr. Jarvis argues that his claim before the court may be brought under the Federal Tort Claims Act ("FTCA").  28 U.S.C. § 1346(b)(1).  However, this court lacks jurisdiction over FTCA claims.  <u>See</u> <u>Brown v. United States</u>, 74 Fed. Cl. 546, 549 (2006) (stating that "the Court of Federal Claims lacks jurisdiction to consider . . . claims . . . under the FTCA"); <u>accord</u> <u>Wood v. United States</u>, 961 F.2d 195, 197 (Fed. Cir. 1992) (stating that the federal district courts have "exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act").

dismissed.

### F.  Treaty Claim

Mr. Jarvis also bases his claim before this court on the Treaty with the Cherokee, July 19, 1866, 14 Stat. 799.  However, as defendant points out, Mr. Jarvis has not identified a provision of this treaty, or of other treaties given passing mention in the complaint, that is money-mandating so as to support Tucker Act jurisdiction for his claim.  Moreover, this court lacks jurisdiction to consider claims arising from a treaty unless otherwise provided by statute, 28 U.S.C. § 1502, and Mr. Jarvis has not alleged the existence of such a statute.  Thus, any claim in the complaint based on treaty rights must be dismissed for lack of subject matter jurisdiction.

### G.  Breach of Trust Claim

Next, Mr. Jarvis contends in his response brief that his claim is for a breach of trust.  See Pl.'s Resp. 5 ("Plaintiff's claim was brought under the Tucker Act, and framed in the language of a breached trust, which Plaintiff Jarvis lays out in [the] complaint in terms of injury by the United States, where Plaintiff Jarvis must be made whole.").  Mr. Jarvis argues that Native Americans are owed a fiduciary duty by the United States, and that the duty arises from a "common law trust relationship."  Id.  Although asserting claims for the first time in a response brief is no substitute for formally amending a complaint, see Movahedi v. U.S. Bank, N.A., 853 F. Supp. 2d 19, 27 (D.D.C. 2012) (stating that allegations raised for the first time in a response brief "cannot defeat [a] motion to dismiss"); Normandy Apartments, Ltd. v. United States, 100 Fed. Cl. 247, 258-59 (2011) (granting leave to a plaintiff to formally amend a complaint in order to assert a new claim), because Mr. Jarvis is proceeding pro se the court will consider his Native American breach-of-trust claim, see Watson v. United States, No. 06-716, 2007 WL 5171595, at *6-8 (Fed. Cl. Jan. 26, 2007) (considering a claim raised for the first time in a response brief by a pro se plaintiff), aff'd, 240 F. App'x 410 (Fed. Cir. 2007).

For this court to have jurisdiction over a Native American breach-of-trust claim, the plaintiff is tasked with identifying "statutes and regulations [that] clearly give the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians."  United States v. Mitchell, 463 U.S. 206, 224 (1983).  The crucial first step in the jurisdictional analysis is for a plaintiff to "identify a specific, applicable, trust-creating statute or regulation that the Government violated."  United States v. Navajo Nation, 556 U.S. 287, 302 (2009).  The second step in the analysis is for the court to determine whether the identified "trust duty [is] money-mandating."  Id.  There is no need for the court to address the second jurisdictional test if the first is not met.  Id.; see also Hopi Tribe v. United States, 782 F.3d 662, 671 (Fed. Cir. 2015) (agreeing with the trial court that there was no trust-creating source of law identified by the plaintiff in that litigation, and not reaching the secondary question of "whether the specific [fiduciary] obligation is money mandating").

Mr. Jarvis has not identified any statutes or regulations that would create a trust relationship between the United States and a descendant of the Cherokee, Powhatan, and Iroquois tribes such as himself.  Any Native American breach-of-trust claim he would assert in

this suit is therefore not within the jurisdiction of the court.  Therefore, to the extent that his breach-of-trust claim is properly before the court, it must be dismissed.

### H.  Reparations Claim

The court now turns to the fundamental question raised by Mr. Jarvis's complaint:  Does this court have jurisdiction over a claim for monetary compensation based on the historic treatment of enslaved persons and Native Americans by the United States, and the ongoing effects of systemic racism on one of their descendants?  Mr. Jarvis thoroughly explores the topic of reparations.[4]  See Compl. 1 (alluding to "Slavery Reparations/Restitution"), 4 (alleging that Native Americans are entitled to reparations pursuant to the Treaty with the Cherokee), 6 (stating that the "United Nations[] agrees that restitution/reparations should be paid to the descendants of slaves"), 15 (discussing "efforts to attempt to raise the issue of reparations and/or restitution[] for Black American natives" and "the viability of lawsuits for reparations for human rights violations"), 16 (stating that although "the U.S. Government[] conceded moral culpability, it refused to provide 'reparations'[] to victims and descendants of slavery"), 22 ("In the context of reparations, the continuing violations [doctrine] appl[ies] in this case, as de facto slavery and oppression is still in effect today, via systemic racism, black codes, economic exclusion, financial hardship, deprivation of rights, equal protection of the law violations, as well as traumatic slave syndrome."), 26 ("The traditional standing for reparations explicitly[] assumes that a familial relationship between the ancestor victim[] and the descendant Plaintiff, what is called 'hereditary' or 'genetic' standing, is sufficient to bring this suit in terms of standing.").  When discussing reparations as a legal remedy, Mr. Jarvis draws a comparison between his claim and those based on the Holocaust, Japanese-American internments, and the historic treatment of Native Americans.  Id. at 15-17.

This court has not been authorized to consider the reparations claim that Mr. Jarvis asserts in his suit.  See Obadele v. United States, 52 Fed. Cl. 432, 442 (2002) (noting that the plaintiffs in that case, who sought reparations as descendants of enslaved persons, "may well be the subject of future legislation providing for reparations for slavery"), aff'd, 61 F. App'x 705 (Fed. Cir. 2003) (table).  For an example of a statutory grant of jurisdiction over reparations claims, this court was granted authorization to review certain claims brought by Japanese-Americans affected by internment during World War II.  See, e.g., Song v. United States, 43 Fed. Cl. 621, 628-30 (1999) (discussing the passage of the Civil Liberties Act of 1988, 50 U.S.C. § 4201); see also Odow v. United States, 51 Fed. Cl. 425, 429 (2001) (noting that a 1992 amendment to the Civil Liberties Act of 1988 "granted claimants the right to seek judicial review of a denial of compensation [for Japanese-American internment during World War II] exclusively in the Court of Federal Claims").  Mr. Jarvis has not pointed to any such authorization for his suit, and the court is aware of none.

In addition to asserting jurisdiction under the Tucker Act, a plaintiff in this court must

---

[4]  Mr. Jarvis also describes his reparations claim as one for restitution, Compl. 1, 5-7, 15-16, 20-22, 28, and as one for an accounting, id. at 20, 22, 28.

point to a money-mandating source of law for his claim.  See Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) (stating that a plaintiff in this court "must look beyond the Tucker Act to identify a substantive source of law that creates the right to recovery of money damages against the United States" (citing Mitchell, 463 U.S. at 216)).  Mr. Jarvis has not identified a source of law that commands that the United States pay reparations to persons in his situation.  Therefore, the complaint before the court must be dismissed for lack of subject matter jurisdiction.[5]

## IV.  APPLICATION TO PROCEED IN FORMA PAUPERIS

As noted above, Mr. Jarvis filed, concurrent with his complaint, an application to proceed in forma pauperis.  Courts of the United States are permitted to waive the prepayment or payment of filing fees and security under certain circumstances.[6]  28 U.S.C. § 1915(a)(1). Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that lists all of their assets, declares that they are unable to pay the fees or give the security, and states the nature of the action and their belief that they are entitled to redress.  Id.  Mr. Jarvis has substantially satisfied the requirements set forth in 28 U.S.C. § 1915(a)(1).  The court therefore grants his application to proceed in forma pauperis.

## V.  CONCLUSION

There is no jurisdiction in this court for the claims stated by Mr. Jarvis in his complaint. Consequently, the court **GRANTS** defendant's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** the complaint for lack of subject matter jurisdiction.  The court also **GRANTS** Mr. Jarvis's application to proceed in forma pauperis.

No costs are awarded.  The clerk is directed to enter judgment accordingly.  Mr. Jarvis is advised that the filing of another complaint in this court that ignores the jurisdictional limits of the Court of Federal Claims may lead to sanctions for frivolous litigation conduct.

Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this

---

[5]  Transfer of the complaint to another federal court would not be in the interest of justice, 28 U.S.C. § 1631, because the question of reparations for the wrong of slavery is generally seen as a political question not susceptible to adjudication in the courts.  E.g., In re Afr.-Am. Slave Descendants Litig., 471 F.3d 754, 758 (7th Cir. 2006).

[6]  While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny applications to proceed in forma pauperis.  See 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of 28 U.S.C. § 1915); see also Matthews v. United States, 72 Fed. Cl. 274, 277 (2006) (stating that this court "has authority to waive the prepayment of filing fees and grant a motion to proceed in forma pauperis").

order would not be taken in good faith because, as alleged, Mr. Jarvis's claims are clearly beyond the subject matter jurisdiction of this court.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Senior Judge